UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOSKINS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 C 6098 |
| | ) |
| MICHAEL ASTRUE, | ) Magistrate Judge Sidney I. Schenkier |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER[1]

In this social security disability insurance benefit appeal, the guardian of the estate of plaintiff Robert Hoskins, Jr. ("plaintiff" or "Robert"),[2] moves for reversal and/or remand of a final decision by the Commissioner of the Social Security Administration ("SSA"), denying Robert's application for Social Security Income ("SSI") (doc. # 25). In the alternative, plaintiff argues that the Appeals Council erred in denying his motion to reopen and reconsider its denial of SSI (*Id.*). The Commissioner has filed a cross-motion for summary judgment to affirm the decision rejecting Robert's claim for SSI (doc. # 37). For the reasons set forth below, we grant in part and deny in part the Commissioner's and the plaintiff's motions, and we remand this case for further proceedings.

### I.

We begin with a summary of the procedural history of this case. The claimant in this case, Robert Hoskins, Jr., suffers from cerebral palsy and possible mental retardation (R. 23, 172). The

---

[1] On December 4, 2009, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 13).

[2] We refer to Robert Hoskins by his first name to avoid confusion with his guardian, Sharon Hoskins, and because that is how he is referred to in the trust documents at issue in this case.

guardian of Robert's person – his mother, Sharon Hoskins ("Ms. Hoskins") – applied for SSI on his behalf on June 15, 2005 (R. 86). The previous month, a "supplemental needs trust" in the amount of approximately $500,000.00 was created for Robert (R. 23, 73, 114). The Northern Trust Company ("Northern Trust") is the trustee and has been the guardian of Robert's estate since July 1997 (R. 106).

On September 27, 2005, SSA determined that the trust was a countable resource to Robert for SSI purposes, and on October 4, 2005, SSA ruled that he was ineligible to receive SSI despite his undisputed disability because – counting the assets in the trust – he had excess resources (R. 83, 86). On October 31, 2005, Ms. Hoskins filed a request for reconsideration (R. 94). On December 20, 2005, SSA completed its reconsideration and again found that Robert was not eligible to receive SSI (R. 95). On January 17, 2006, Ms. Hoskins requested a hearing before an ALJ, which was granted and scheduled for October 3, 2007 (R. 98, 100, 124).

On October 2, 2007, the Illinois probate court authorized a first amendment to the trust ("First Amended Trust") (R. 107, 136). At the October 3, 2007 hearing, only Robert's representatives appeared. In a written opinion dated November 30, 2007, the ALJ adopted the trustee's argument that the First Amended Trust was not a countable resource, and thus, that Robert was entitled to SSI (R. 19, 25-26).

On January 11, 2008, the regional commissioner of SSA submitted written argument in support of a request that the Appeals Council review and reverse the ALJ's decision (R. 143-46). On January 28, 2008, the Appeals Council sent out a notice indicating its intent to review the ALJ's November 30, 2007, decision on the grounds that the ALJ committed an error of law and his decision

was not supported by substantial evidence (R. 147). The notice indicated that the Appeals Council planned to find Robert ineligible for SSI due to excess resources (R. 148).

On February 26, 2008, the probate court approved a second amendment to the supplemental needs trust ("Second Amended Trust") (R. 157). That same day, Robert's attorney wrote a letter contesting the Appeals Council's intended decision to find the First Amended Trust a countable resource, and arguing that in any event the newly filed Second Amended Trust was not a countable resource (R. 153). On July 2, 2009, the Appeals Council issued a ruling reversing the ALJ's decision finding Robert eligible for SSI. The Appeals Council held that the trust – in its original and amended forms – is a countable resource, and thus precludes Robert's eligibility for SSI due to excess resources (R. 16-18).

On August 4, 2009, the trust was amended for a third time (R. 7, 9). On that same day, Robert's attorney sent the Appeals Council a letter entitled a "Motion to Reconsider," asking the Appeals Council to reconsider its unfavorable decision and find Robert eligible for SSI, and attaching the Third Amended Trust (R. 5-6). On September 22, 2009, the Appeals Council denied the motion to reconsider (R. 3). On September 30, 2009, Robert's attorney sought review in this Court of the Appeals Council's denial of SSI and refusal to reopen the decision denying SSI (doc. #1: Complaint).

## II.

The administrative record in this case consists of the supplemental care trusts, legal arguments as to whether Robert is entitled to SSI, and Social Security rulings and opinions on this issue. The parties agree that Robert was born with and continues to suffer from cerebral palsy.

3

Willie Hoskins, Robert's cousin and one of his caregivers, testified that Robert also suffers from severe mental retardation (R. 172).

On May 4, 2005, a supplemental care trust was entered into on Robert's behalf with approximately $500,000.00 in assets. The trust was funded with proceeds Robert received in 1989 or 1990 from a settlement in a personal injury lawsuit that was filed on his behalf due to injuries he received at birth and his resulting disabilities (R. 111, 173-74). Article Three of the trust stated that it "shall terminate upon Robert's election following his restoration of rights or upon [his] death," and that upon Robert's death,

> in accordance with 42 U.S.C. 1396p(d)(4)(A) and 89 Ill. Admin. Code, Ch. 1, Sect. 120.347(d)(1), the Trust assets remaining upon termination as provided or at the death of Robert shall be paid to the appropriate State agencies, as reimbursement to the State of Illinois for benefits provided to Robert during Robert's lifetime, except that the Trustee may with court approval and consistent with existing law first pay any outstanding, reasonable expenses for maintaining the existence of the Trust, and final bills, debts, expenses, taxes, fees, and funeral-related items. In the event that any assets of the Trust are remaining after payment of the reasonable expenses and reimbursement to the State of Illinois as set forth above, then the balance shall be distributed to whomever Robert designates by will, or if none, to Robert's estate.

(R. 77). The supplemental care trust further stated that: "[t]he Trust is created for the purpose of providing for the extra and supplemental needs, comforts and luxuries of Robert during his lifetime," that are not covered by state or federal medical assistance programs, and that the trust "will not cause disqualification from[] the benefits that Robert otherwise receives as a result of his disability . . ." (R. 73-74).

### A.

On June 15, 2005, Ms. Hoskins filed an application for SSI on Robert's behalf (R. 86). In support of the application, on September 7, 2005, Kelly Hancock, an attorney and a Vice President

4

at Northern Trust who represented Northern Trust in its capacity as guardian of Robert's estate, submitted the supplemental care trust and attached a brief letter stating that the trust "was created for the purpose of providing for the extra and supplemental needs, comforts and luxuries of Mr. Hoskins during his lifetime" (R. 72).

In a memorandum dated September 27, 2005, SSA indicated its intent to find Robert ineligible for SSI because he had excess resources in his trust (R. 83-84). SSA stated that the trust did not meet one of the requirements of the "special needs trust exception," all of whose requirements must be met to stop the trust assets from being counted as a resource for SSI purposes (*Id.*). Specifically, SSA explained that the trust failed to provide that upon Robert's death, the state will be reimbursed as the first payee for the total medical assistance it provided for Robert except for certain taxes due and fees for the administration of Robert's estate (R. 84). In addition, SSA argued that Robert's trust was a countable resource under SSA's "regular resource rules," because Robert could revoke the trust as the grantor and sole beneficiary of the trust, and the trust allows Robert to terminate the trust following his restoration of rights (R. 84-85).

One week later, on October 4, 2005, SSA issued a notice denying Robert's application for SSI because he had resources worth more than $2,000.00 for the calendar years for which he sought benefits (R. 86).[3] SSA determined that Robert's resources amounted to over $470,000.00 in June, July, August, and September 2005 due to the supplemental care trust (R. 89-92).[4] Ms. Hoskins timely filed a request for reconsideration on October 31, 2005 (R. 94), which was denied on

---

[3]The Social Security Act provides that an individual will not be eligible for SSI if he or she has resources that exceed $2,000.00 for the calendar year for which he or she is seeking benefits. 42 U.S.C. § 1382(a)(1)(B)(ii), (a)(3)(B).

[4]SSA erroneously left off a zero in its September 2005 calculation, listing Robert's resources as $47,600.00 rather than $470,600.00 (R. 92).

5

December 20, 2005 (R. 95). Ms. Hoskins then timely filed a request for a hearing before an ALJ (R. 98), which was granted, with a hearing date set for October 3, 2007 (R. 100, 124).

B.

Ms. Hancock, Ms. Hoskins, and Willie Hoskins appeared at a pre-hearing meeting before the ALJ on August 22, 2007 (R. 166, 190). During that meeting, Ms. Hancock argued that Robert should be entitled to SSI because the supplemental care trust was an "over trust" created to provide for Robert's supplemental needs that were not covered by Medicaid and Social Security, and the public benefits would be paid back from the trust assets when Robert dies (R. 167-68, 179-80). Further, Ms. Hancock noted that the beneficiaries of the nine other supplemental trust arrangements that she oversees all receive SSI (R. 169-70). The ALJ questioned Willie Hoskins as to the nature of Robert's illness, which Willie Hoskins described as severe mental retardation, some paralysis on his left side, and cerebral palsy (R. 171-72). The ALJ then asked whether Robert had previously received SSI, and Ms. Hancock replied that he received benefits in the 1980s, but they were discontinued after he received $500,000.00 from the personal injury lawsuit filed on his behalf in 1989 or 1990 (R. 172-73). The ALJ then took the matter under advisement (R. 180).

On October 2, 2007, the probate court authorized Northern Trust to execute a first amendment to the supplemental care trust, specifically "to make any and all amendments necessary" so that the trust will "be in compliance with Social Security Administration regulations" (R. 136). The First Amended Trust, filed the same day, amended Article Three so that it stated that upon termination of the trust or Robert's death, the remaining trust assets will be used to reimburse the State of Illinois, except that "the Trustee may with court approval first pay taxes as allowed by current law. Any other final expenses must be in compliance with current law and with the

6

expressed written consent of the State with notice to all interested parties and prior court approval" (R. 139).

Ms. Hancock and Robert's attorney, Paul Franciszkowicz, appeared at the ALJ hearing on October 3, 2007 (R. 186). Ms. Hancock testified that Robert was adjudicated disabled by the probate court approximately ten years prior based on cerebral palsy and mental retardation, and that he is unable to manage his personal and financial affairs (R. 193). She again testified that the supplemental care trust is a special needs trust that Northern Trust created "to allow [Mr. Hoskins] to . . . qualify for government benefits to meet his medical needs so that his trust assets could be preserved for his supplemental needs," because "there's no likelihood that he'll ever be able to work and support himself," and Northern Trust sought to ensure that "his estate assets would be able to last throughout his lifetime" (R. 194).

Ms. Hancock further testified that Article Three of the First Amended Trust was amended to address SSA's concern that the State be reimbursed first, except for certain exceptions permitted by law (R. 198). Further, she testified that Robert does not have the mental capacity to revoke a legal document and is not expected to, nor does he have the right to receive income from the trust because disbursements on his behalf can only be made with court approval (R. 199-200). Ms. Hancock also clarified that there is no other intended beneficiary of the trust besides Robert (R. 201). The ALJ considered Ms. Hancock an expert based on her years of experience with special needs trusts (R. 204).

On November 30, 2007, the ALJ issued a fully favorable decision finding Robert eligible for SSI (R. 19). Although representatives of SSA did not appear at the hearing, in making his decision, the ALJ considered the arguments in SSA's September 27, 2005 memorandum (R. 23-24). In his

7

opinion, the ALJ made the following rulings. *First*, the ALJ determined that the trust need not be established for the sole benefit of the individual beneficiary (R. 25). *Second*, the ALJ held that Northern Trust, not Robert, was the grantor of the trust, and thus the trust is not revocable (*Id.*). *Third*, the ALJ found that the early termination provision did not create a contingent interest in any foreseeable third party (*Id.*). *Fourth*, the ALJ found that the First Amended Trust satisfied SSA's concern about Article Three of the trust, by providing that upon Robert's death, the State had priority as first payee over payment of other debts and expenses (*Id.*). Therefore, the ALJ found that the First Amended Trust was not a countable resource for purposes of determining Robert's eligibility for SSI (R. 25-26).

## C.

On January 11, 2008, the regional commissioner of SSA requested that the Appeals Council reopen the ALJ's decision, and provided written argument that the ALJ erred in finding that the supplemental needs trust was not a countable asset (R. 145-46). The regional commissioner argued: that the trust must be for the sole benefit of the individual; that Robert is both the grantor and sole beneficiary of the trust and thus the trust is revocable; that the early termination provision creates a contingent interest in third parties; that the probate court did not approve the First Amended Trust; and that the trust fails to provide that all states that provided medical assistance to Robert must be reimbursed before other expenses are paid (R. 145-46).

On January 28, 2008, the Appeals Council sent out a notice indicating its intent to review the ALJ's decision, and to find Robert ineligible for SSI due to excess resources on the grounds that the ALJ committed an error of law and his decision was not supported by substantial evidence (R. 147-48). *First*, the Appeals Council stated that the ALJ "provided no rationale" for his conclusions and

"appears to have simply accepted the arguments submitted by the attorney for the claimant's representative" (R. 148). *Second*, the Appeals Council stated that the ALJ evaluated only whether the trust met the criteria for the special needs trust exception, and not whether the trust meet the regular resource requirements (*Id.*). *Third*, the Appeals Council agreed with SSA's contention that the First Amended Trust was not approved by the Circuit Court (R. 149). *Fourth*, the Appeals Council stated that Robert was the grantor of the trust because it was established with his assets, despite the fact that Northern Trust acted in a fiduciary capacity to establish the trust (*Id.*). *Fifth*, the Appeals Council stated that Robert was the sole beneficiary of the trust, and because the trust does not have contingent beneficiaries, the trust is revocable (*Id.*).

On February 26, 2008, the probate court approved a second amendment to the supplemental needs trust ("Second Amended Trust") (R. 159, 162-63). The Second Amended Trust amended Articles One and Three to first provide reimbursement to Illinois or any other state that provided benefits to Robert (R. 162-63). In addition, Article Three was amended to add a contingent beneficiary upon Robert's death:

> In the event that any assets of the Trust are remaining after payment of the reasonable expenses and the reimbursement to the State of Illinois and any other State in which Robert resided and received benefits . . ., then . . . (a) One Percent (1%) [of the balance] shall be distributed to Sharon Hoskins, Guardian of the Person of Robert Hoskins; [and] (b) Ninety-nine (99%) shall be distributed pursuant to the Will drafted by Robert, or if none, according to the laws of intestacy . . .

(R. 163). The probate court also issued a declaratory order stating that Robert's supplemental care trusts "were and continue to be irrevocable" (R. 159).

Also on February 26, 2008, Robert's attorney wrote a letter contesting the Appeals Council's intended decision to find the original and First Amended Trust to be a countable resource, and

9

arguing that the newly filed Second Amended Trust should be considered and found to not be a countable resource (R. 153). Robert's attorney argued that: (1) because SSA chose not to appear at the ALJ hearing, its arguments for review of the ALJ opinion unfairly raised issues that were not raised at the hearing in violation of Robert's due process rights; (2) he had provided proof of a court order approving the First Amended Trust; (3) the Second Amended Trust is not revocable because Robert is the sole beneficiary during his lifetime, but there is a residuary beneficiary upon his death; (4) because Robert is and will continue to be under an incapacity, the trust is irrevocable because "the only possible way to revoke the trust is through court order, and there is no evidence to suggest that the Probate Court ever would have allowed such a revocation;"(5) SSA must accept the probate court's declaratory judgment finding the trust irrevocable; and (6) the Second Amended Trust addresses SSA's concern that the First Amended Trust did not call for repayment to other states besides Illinois (R. 154-57). Robert's attorney requested that the Appeals Council uphold the ALJ's decision and allow him to appear before them to address the legal and policy issues in the case (R. 157-58).

The Appeals Council did not hold a hearing, but on July 2, 2009, it issued an unfavorable decision reversing the ALJ's decision finding Robert eligible for SSI (R. 10). In its written decision, the Appeals Council adopted the ALJ's statements regarding the relevant provisions of the Act, SSA's regulations and rulings, the issues in the case, and the evidentiary facts (R. 14). The Appeals Council then adopted the statements in its January 28, 2008 notice of its intent to review the ALJ's decision as its basis for concluding that the assets under the First Amended Trust were a countable resource (R. 15).